**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VICTORIA CENTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-85 CAS |
| | ) | |
| ALLSTATE PROPERTY & CASUALTY | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This diversity matter is before the Court on defendant Allstate Property and Casualty Insurance Company's ("Allstate") motion for summary judgment pursuant to Rule 56(a), Federal Rules of Civil Procedure. Plaintiff Victoria Cento ("plaintiff") opposes the motion and it is fully briefed and ready for disposition. For the following reasons, Allstate's motion for summary judgment will be granted in part and denied in part.

### I. Background

This cause of action involves an insurance dispute. Allstate issued plaintiff a homeowners policy covering her residence in Imperial, Missouri. Sometime in December 2007, there was a leak in the ice maker of plaintiff's refrigerator that caused some water damage. Approximately forty-five days later, plaintiff made a claim on the homeowners policy. Plaintiff alleges in her Second Amended Complaint that defendant failed to adequately respond to her claim and, as a result, the company aggravated the loss to her cabinetry, flooring, vanities, basement ceiling, furniture, electronics and personal items. She also alleges Allstate failed to pay her for mold damage to her home. Plaintiff further alleges that she has made a written demand on her claim, which Allstate has denied without reason. Plaintiff brings claims against Allstate for breach of contract (Count I) and

statutory vexatious refusal to pay in violation of §§ 375.296 and 375.420, Mo. Rev. Stat. (2000) (Count II), under Missouri law.[1]

Allstate answered the Second Amended Complaint and alleged as affirmative defenses that plaintiff failed to comply with her duties under the policy at issue, and that she failed to mitigate her damages. Allstate also filed a counterclaim for declaratory judgment seeking a judicial declaration of no coverage under the policy.

In the motion presently before the Court, defendant Allstate moves that the Court enter judgment in its favor as to plaintiff's claims against the company. Allstate argues that under the homeowners policy at issue, it elected to pay plaintiff for the water damage to her home as opposed to electing to repair and, therefore, under Missouri law, it cannot be held responsible for the repairs that were done to her home. Allstate also argues that it paid the policy limit for mold coverage, that plaintiff had no living expenses that were covered under the policy, and with respect to alleged damage to personal property, plaintiff did not meet her obligations under the policy.

## II.  Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party.  City of Mt. Pleasant, Ia. v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly

---

[1]The parties agree that Missouri law applies to this dispute.  This Court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1332, because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence he or she must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e); <u>Herring v. Canada Life Assur. Co.</u>, 207 F.3d 1026, 1029 (8th Cir. 2000).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co., v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>Herring</u>, 207 F.3d at 1029 (quoting <u>Anderson</u>, 477 U.S. at 248).  A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact.  <u>See</u> <u>Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004).  "Self-serving, conclusory statements without support are not sufficient to defeat summary judgment."  <u>Armour and Co., Inc. v. Inver Grove Heights</u>, 2 F.3d 276, 279 (8th Cir. 1993).

In passing on a motion for summary judgment, it is not the court's role to decide the merits. The court should not weigh evidence or attempt to determine the truth of a matter.  Rather, the court must simply determine whether a genuine issue of material fact exists.  <u>Bassett v. City of Minneapolis</u>, 211 F.3d 1097, 1107 (8th Cir. 2000).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving the instant motion for summary judgment.

*III.  Facts*

Allstate issued plaintiff a homeowners policy, Policy No. 000915913350 (hereinafter "Policy") insuring the real and personal property at 5577 Pierce View, Imperial, Missouri, with a relevant policy period of June 4, 2007 through June 4, 2008.  The Policy provided coverage, among other things, of plaintiff's dwelling, her personal property, additional living expenses up to a period of 18 months, and mold coverage up to $5,000.

Under the terms of the Policy, if a loss to property occurs that may be covered,

[**Y**]ou[2] must:

> a) immediately give **us** or **our** agent notice.
>
> b) protect the property from further loss.  Make any reasonable repairs necessary to protect it.  Keep an accurate record of any repair expenses.
>
> c) separate damaged from undamaged personal property.  Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed. . . . .
>
> e) produce receipts for any increased costs to maintain **your** standard of living while you reside elsewhere, . . . .
>
> f) as often as **we** reasonably require:

---

[2]Under the terms of the Policy, "**We**, **us**, or **our**" is defined as "the company named on the Policy Declarations."  See Doc. 79, Ex. C at 4.  Allstate is named on the Policy Declarations.  The term "**You** or **your**" is defined as "the person listed under Named Insured[s] on the Policy Declarations as the insured and that person's spouse."  Id. at 4.  "Vickie Cento" is listed as the named insured on the Policy Declarations.

4

1. Show **us** the damaged property.[3]

. . . .

<u>See</u> Doc. 79, Ex. C at 16.

The Policy contained the following provision:

> **We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

<u>Id.</u> at 17.

Under the terms of the Policy, if a covered loss occurs, Allstate may elect to either repair, rebuild or replace the damaged property, or to pay for all or any of the damaged property under the following Policy provision:

> 4.   **Our Settlement Options**
>
> In the event of a covered loss, **we** have the option to:
>
>> a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of the like kind and quality within a reasonable time; or
>>
>> b) pay for all or any part of the damaged, destroyed or stolen property . . . .

<u>Id.</u> at 17.

---

[2]Under the terms of the Policy, "we, us, or our" is defined as "the company named on the Policy Declarations." <u>See</u> Doc. 79, Ex. C at 15. Allstate is named on the Policy Declarations. <u>Id.</u> at 4. The term "you or your" is defined as "the person listed under Named Insured[s] on the Policy Declarations as the insured and that person's spouse." <u>Id.</u> at 15. "Vickie Cento" is listed as the named insured on the Policy Declarations. <u>Id.</u> at 4.

If Allstate elects to pay for the damages rather than repairing, rebuilding or replacing property, it must pay for the damages on an "Actual Cash Value" basis under the following Policy provision:

> 5.   **How We Pay For A Loss**
>
> Under Coverage A – **Dwelling Protection, Coverage B – Other Structure Protection and Coverage C – Personal Property Protection**, payment for covered loss will be by one or more of the following methods:
> . . . .
>
>> b) Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be made on an actual cash value basis.  This means there may be a deduction for depreciation. Payment will not exceed the Limit of Liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

Id. at 17.

Under the Policy, plaintiff had 180 days after the Actual Cash Value payment to make an additional claim, over the Actual Cash Value payment, for costs incurred as rebuilding or replacing damaged property:

> **You** may make claim for additional payment as described in paragraph c) and paragraph d) below, if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.
>
> c) Building Structure Reimbursement.  Under **Coverage A – Dwelling Protection** and **Coverage B – Other Structures Protection**, we will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild, or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.  This additional payment includes the reasonable and necessary expense for treatment and removal and disposal of contaminants, toxins or pollutants as required to complete

repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I, Conditions – Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss** and shall not be payable for any losses excluded in **Section I – Your Property**, under **Losses We Do Not Cover Under Coverage A, Coverage B, and Coverage C, section E**.

Building Structure Reimbursement will not exceed the smallest of the following amounts:

> 1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;

> 2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises** . . . .

Id. at 18.

Under the Policy, Allstate provides only $5,000 coverage for damage caused by mold following a covered water loss:

**Section I Conditions**
. . . .
19.     **Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss**
In the event of a covered water loss under **Coverage A–Dwelling Protection** . . . or **Coverage C–Personal Property Protection**, **we** will pay up to $5000 for mold, fungus, wet rot, dry rot **remediation**.

Id. at 21.

Under the Policy, Allstate will pay for reasonable increases in living expenses because of a direct and physical loss, excluding the remediation of mold:

**Additional Protection**

1.     **Additional Living Expense**

7

> a) **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover . . . makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I, Conditions – Mold, Fungus, Wet Rot and Dry Rot Remediation as a Direct Result of a Covered Water Loss.**

Id. at 10.

Under the Policy, if Allstate and plaintiff failed to agree on the loss, either party could seek an appraisal under the following Policy provision:

> 7.    **Appraisal**
>
> If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state whether the **residence premises** is located to select an umpire.

Id. at 19.

On February 1, 2008, plaintiff first reported to Allstate that she had sustained water damage to her home. On February 4, 2008, plaintiff told Allstate that the ice maker in her refrigerator broke forty-five (45) days earlier on December 17, 2007, releasing water into her kitchen and causing water damage to the kitchen and living room floors. Plaintiff did not notify Allstate of any damage to personal property, water damage to any bedrooms, bathrooms, mold-related issues, or any additional living expense incurred following the water loss. Plaintiff did inform Allstate that the

broken water line was fixed by a friend at the time of the loss and that she was able to clean up the water herself, but she recently noticed the floor had started to buckle.

On February 7, 2008, Allstate adjuster Mike Lichius inspected the dwelling for water damage. He inspected plaintiff's kitchen, living room, and basement. During the inspection on February 7, 2008, plaintiff did not notify Mr. Lichius of any damage to personal property, water damage to any bedrooms, bathrooms, mold-related issues, or any additional living expenses incurred following the water loss. On that same day, Mr. Lichius prepared a summary of the damages done to plaintiff's dwelling in the amount of $1,650.92, exclusive of carpet replacement. The estimate included removal of the damaged carpet and pad in the living room, vinyl flooring in the kitchen, underlayment of the cabinet and replacement of the basement insulation. Plaintiff accepted the claim settlement onsite, and payment of $1,650.92 was issued to plaintiff on February 7, 2008. On February 11, 2008, plaintiff cashed the $1,650.92 check.

Thereafter, Allstate received an additional estimate from CarpetOne for the replacement of the carpet in plaintiff's living room in the amount of $3,733.86. Plaintiff also submitted an estimate to Allstate for vent cleaning, and resetting her kitchen island and electric work, in the amount of $230 and $800, respectively. On February 21, 2008, Allstate issued to plaintiff, directly, an additional payment of $4,763.86, which included $3,733.86 for carpet replacement, $230 for vent cleaning and $800 for resetting the kitchen island and electric work. On February 27, 2008, plaintiff cashed the $4,763.86 check.

On March 6, 2008, plaintiff requested an additional payment of $1,354.37, to compensate her for cleaning her home after the loss and moving her fish tank during repairs. She based this amount on an estimate of $17.00 an hour for 40 hours of work. On March 8, 2008, Allstate issued

payment, directly to plaintiff, for $1,354.37. On March 14, 2008, plaintiff cashed the $1,354.37 check. On March 18, 2008, plaintiff submitted an estimate to Allstate from Clean USA for $861.25 to clean her living room furniture. On March 26, 2008, Allstate issued payment, directly to plaintiff, in the amount of $861.25. On April 1, 2008, plaintiff cashed the $861.25 check.

Plaintiff never moved out her home following this water loss, or during any of the repairs that occurred in February 2008 through April 2008. Plaintiff retained her friend, Keith Flamm, to do much of the repairs to her home, including replacing the buckled subfloors in her kitchen. Mr. Flamm dried out the kitchen and living floors with fans for two days after wiping up the water with towels. He replaced the kitchen vinyl floor with ceramic tile and replaced the living room carpeting with hardwood flooring. Mr. Flamm only replaced areas of the subfloor in the kitchen that he believed sustained damage, which included removal of some sections of the linoleum by the island where the floor was warping. He placed concrete board over the top of the rest of the linoleum to place ceramic tiles. Mr. Flamm did not check the length or width of the insulation in the basement for any water, which was underneath the floor boards, to see if any water had soaked through the insulation. Mr. Flamm felt the top of the insulation from the kitchen flooring to ascertain if it was dry, but he did not investigate the width of the insulation, which extended down into the basement, to ascertain whether water had seeped through the insulation. Mr. Flamm did not replace the subfloors in the living room. Mr. Flamm noticed water stains on the subfloors in the living room in a large area by the kitchen when the carpeting was pulled up, but he did not remove the subfloors. He laid the new hardwood flooring over the old subfloor.

On August 18, 2009, plaintiff contacted Allstate with regard to a new claim for mold growing in her basement, which plaintiff believed was related to the water loss of December 2007.

Allstate sent an environmental specialist to examine the basement. A third-party mold specialist opined that mold could have slowly developed from the water loss due to the condition of the basement. On August 28, 2009, Allstate issued plaintiff payment in the amount of $5,000, the Policy's limit for mold. On August 31, 2009, plaintiff cashed the $5,000 check. The $5,000 check did not contain a notation that it was related to coverage for mold. At the time, plaintiff had no other claims pending with Allstate except for the mold claim.

On September 8, 2009, twenty-two months after plaintiff first reported the water loss, plaintiff contacted Allstate to make a claim for personal property she alleged was damaged as a result of the December 2007 water loss. On September 11, 2009, Allstate sent contents specialist Carlita Barnes to plaintiff's residence to meet with plaintiff and inspect the alleged damage to her personal property. Ms. Barnes contends that she did not see any direct water loss or water stains to the personal property in the basement. Plaintiff admitted to Ms. Barnes that she had thrown away many of the affected items. Ms. Barnes inquired further about the affected items plaintiff threw away. Plaintiff believed Ms. Barnes displayed a disrespectful attitude towards plaintiff's personal property, and she directed Ms. Barnes to remove herself from the premises. A week or so after Ms. Barnes's visit, a third-party vendor visited plaintiff's home on Allstate's behalf and prepared an inventory of the personal property in plaintiff's basement. Sometime thereafter, Ms. Barnes, Mr. Lichius and Michael Ribeiro returned to plaintiff's home to inspect her personal property and flooring. The claims notes maintained by Allstate state that Ms. Barnes and Mr. Ribeiro saw no signs of water damage on the claim personal property, aside from water stains on what appeared to be an old picnic table. See Doc. 79, Ex. D at 1. Allstate closed plaintiff's claim for personal property without payment for any loss.

*IV. Discussion*

In her Second Amended Complaint, plaintiff asserts two state law claims under Missouri law against defendant Allstate, for breach of contract (Count I) and vexatious refusal to pay (Count II). Both of the claims stem from water damage that occurred in plaintiff's home in December 2007. In its motion for summary judgment, Allstate argues that it is entitled to judgment as a matter of law as to both claims because it has fulfilled its obligations under the Policy. Allstate contends that in regard to plaintiff's claims for damages that were not paid, the damages were either not covered under the Policy, or plaintiff failed to meet her obligations under the Policy with respect to these claims. Plaintiff opposes the motion for summary judgment and contends that Allstate failed to reimburse her for, among other things, mold abatement, damage to personal property and additional repairs to her dwelling due to water damage.

**A.      Breach of Contract and Vexatious Refusal to Pay**

This is a diversity case, and both parties agree that Missouri law applies. The Eighth Circuit has held that under Missouri law, the interpretation of an insurance contract is "generally a question of law, particularly in reference to the question of coverage." Spirtas Co. v. Nautilus Ins. Co., 715 F.3d 667, 671 (8th Cir. 2013) (quoting D.R. Sherry Constr., Ltd. v. American Family Mut. Ins. Co., 316 S.W.3d 899, 902 (Mo. 2010) (en banc)). As stated by the Eighth Circuit, "Missouri courts interpret terms in an insurance contract according to their plain meaning." Id. (citing Shahan v. Shahan, 988 S.W.2d 529, 535 (Mo. 1999) (en banc)). "The plain or ordinary meaning is the meaning that the average layperson would understand." Shahan, 988 S.W.2d at 535. Further, ambiguities are resolved in favor of the insured. Burns v. Smith, 303 S.W.3d 505, 509-10 (Mo. 2010) (en banc). "Exclusion clauses are strictly construed against the insurer, especially if they are

of uncertain import." Aetna Cas. & Sur. Co. v. Haas, 422 S.W.2d 316, 321 (Mo. 1968); see also Bituminous Cas. Corp. v. Walsh & Wells, Inc., 170 S.W.2d 117, 121 (Mo. Ct. App. 1943).

Under Missouri law and the language of the Policy at issue, it is the duty of the insurer to repair the damage to the property or to pay the insured the difference between the market value of the property immediately before the loss and the market value immediately after the loss, up to the Policy's limits. Porter v Shelter Mut. Ins. Co., 242 S.W.3d 385, 393 (Mo. Ct. App. 2007)(citing Mo. Rev. Stat. § 379.150 (2000)); American Family Mut. Ins. Co. v. Doug Rose, Inc., 841 S.W.2d 698, 701 (Mo. Ct. App. 1992) (same); DeWitt v. American Family Mut. Ins. Co., 667 S.W.2d 700, 708 (Mo. 1984) (en banc).

Upon an election to repair, the insurer is obligated to oversee the remediation and repairs, taking full responsibility for the repairs. Doug Rose, Inc., 841 S.W.2d at 701; Samuels v. Illinois Fire Ins. Co., 354 S.W.2d 352, 357  (Mo. Ct. App. 1962).  Upon an election to pay, however, the insurer fulfills its obligation to the insured upon payment of the difference between the fair market value immediately before and after the loss.  Hueser v. Shelter Mut. Ins. Co., 901 S.W.2d 138, 139 (Mo. Ct. App. 1995); see also Abercrombie v. Allstate Ins. Co., 891 S.W. 2d 838, 840 (Mo. Ct. App. 1994).  Under Missouri law, the difference in value of the property immediately before and immediately after the loss does not necessarily equal the cost of repair.  JAM Inc. v. Nautilus Ins. Co., 128 S.W.3d 879, 896 (Mo. Ct. App. 2004), Wells v. Missouri Prop. Ins. Placement Facility, 653 S.W.2d 207, 215 (Mo. Ct. App. 2004).  That said, the cost of repair is admissible as evidence to show the difference in value, and it is generally used by both insurers and insureds in settling claims. Wells, 653 S.W.2d at 210.  In a suit for breach of an insurance contract, the burden to prove the damages is on the insured. Id. at 211.

To prevail on a claim for vexatious refusal to pay, plaintiff must show that Allstate's refusal to pay the loss was willful and without reasonable cause or excuse. Watters v. Travel Guard Int'l, 136 S.W.3d 100, 108 (Mo. Ct. App. 2004). A claim of vexatious refusal to pay requires proof that (1) plaintiff had an insurance policy with Allstate, (2) Allstate refused to pay, and (3) Allstate's refusal was without reasonable cause or excuse. See Dhyne v. State Farm Fire & Cas. Co., 188 S.W.3d 454, 456-57 (Mo. 2006) (en banc). "There may be no vexatious refusal where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense. Thornburgh Insulation, Inc. v. J.W. Terrill, Inc., 236 S.W.3d 651, 657 (Mo. Ct. App. 2007).

1.     Water Loss to Dwelling

In the instant case, Allstate elected, under the Policy and Missouri law, to pay plaintiff for the damage to her dwelling; the company did not undertake the repairs. It is undisputed that upon being notified plaintiff had suffered a water loss due to a leak in the supply line to her refrigerator's ice maker, Allstate sent out an adjuster to plaintiff's home to inspect the damage. On February 7, 2008, the adjuster prepared an estimate for the cost of repair to plaintiff's dwelling, which included the removal of damaged carpet and pad in the living room, vinyl flooring in the kitchen, underlayment of the cabinet and replacement of basement insulation. Based on the adjuster's estimate, Allstate issued plaintiff an initial check payment of $1,650.92, which plaintiff accepted and cashed. From mid-February through mid-March 2008, plaintiff submitted supplemental estimates from various contractors for additional repairs, carpet replacement and cleaning, all of which Allstate paid.

Based on the record before it, the Court finds that Allstate fulfilled its obligations under the Policy as to water loss to plaintiff's dwelling. Within a week of being notified of water damage, Allstate inspected the dwelling and paid what it estimated to be the extent of the damage. Over the course of the next month and a half, plaintiff made a number of additional claims for expenses related to water damage to her dwelling and it is undisputed that Allstate paid all of these claims. Plaintiff made no additional claims within 180 days of February 7, 2014, the day Allstate wrote its first check, for damage to her dwelling that went unpaid. See Doc. 79, Ex. C, at 19. Allstate did not elect to repair, it elected to pay, which it did.

In her response to defendant's motion for summary judgment, plaintiff argues that Allstate did not meet its obligations under the Policy for damage to her dwelling because it failed to pay for a claim made in the fall of 2009 for "cupping" in the planks of hardwood that were installed as replacement flooring in the living room. The cupping, she contends, was a result of moisture rising from the subfloor. She argues that Allstate is responsible for the cupping because when it adjusted her claim in February 2008, it failed to make an adjustment for the remediation of the water that was present in the subfloor and, therefore, the company should be responsible for the damage done to the replacement flooring.

In Missouri, it is the insured's duty to apprise the insurer of damages and the insurer's duty to pay those damages covered by the policy. West v. Shelter Mut. Ins. Co., 864 S.W.2d 458, 461 (Mo. Ct. App. 1993). Plaintiff has provided no legal authority or pointed to a provision in the Policy that would require Allstate to investigate and uncover all of the damages to plaintiff's dwelling. Rather, under the express terms of the Policy, the insured has the responsibility of notifying Allstate of the damages, protecting property insured by the Policy from further loss, making reasonable

repairs necessary and keeping accurate records if any repairs and expenses. <u>See</u> Doc. 79, Ex. C at 16. Under Missouri law, duties like those under the Policy are conditions precedent to recovery where the exercise of the duties is material to additional damages or loss. <u>Friend v. State Farm Mut. Auto. Ins. Co.</u>, 746 S.W.2d 420, 423 (Mo. Ct. App. 1988); <u>Girard v. State Farm Mut. Auto. Ins. Co.</u>, 737 S.W.2d 254, 256 (Mo. Ct. App. 1987).

Here, Mr. Flamm, the carpenter plaintiff hired and directed, did find additional water damage to the subfloor when he removed the carpet and padding in the living room. Mr. Flamm testified that when he tore out the carpeting and pad, he saw water staining on the subfloor, but the subfloor was not warped or buckled. He further testified that he did not put dryers on the subfloor because to him it appeared that it was already dry, and he did not rip out or replace the subfloor. At that time, plaintiff could have notified Allstate that there was water damage to the subfloor, but she did not. Instead, plaintiff went ahead with the repairs and waited for over a year, when her new hardwood floor began to buckle, to notify Allstate of the damage to the subfloor. The Court finds Allstate is not responsible under the Policy for the damage to the new floors. Plaintiff should not have ignored evidence of additional water damage and proceeded with planned repairs. Under the terms of the Policy she had a duty to inform Allstate of the damage to the subfloors. She also had a duty to protect her property from further loss.[4] As there no other evidence in the record of damage to plaintiff's dwelling for which plaintiff made a claim and Allstate did not pay, Allstate is entitled

---

[3]There is also undisputed evidence in the record that on plaintiff's direction, Mr. Flamm did not even make all the repairs set forth in Allstate's adjuster's estimate. The adjuster's summary included replacing the insulation in the basement ceiling, which was water damaged. This repair was not done. Mr. Flamm testified that plaintiff did not instruct him to fix the insulation in the basement.

to summary judgment on plaintiff's claims for breach of contract in Count I and vexatious refusal in Count II with respect to water damage to plaintiff's dwelling.

### 2. Mold

Plaintiff also alleges in the Second Amended Complaint that Allstate failed to reimburse her for mold damage that resulted from the water leak. With regard to mold, Allstate argues in its motion for summary judgment that it met all of its obligations under the Policy when it paid plaintiff the policy limit for mold coverage. The Policy limit for mold was $5,000. It is undisputed that on August 18, 2009, plaintiff contacted Allstate regarding a new claim for mold growing in her basement, which plaintiff believed was related to the December 2007 water loss. A mold inspection was arranged, and a third-party mold specialist opined that mold could have slowly developed from the water loss due to the condition of the basement. On August 28, 2009, Allstate issued plaintiff a check for $5,000, which plaintiff cashed shortly thereafter. Based on these facts, Allstate argues that it has met its obligations under the Policy for mold coverage.

Plaintiff argues in her opposition to defendant's motion for summary judgment that Allstate has failed to demonstrate that a specific payment was delineated as mold adjustment. Plaintiff admits, however, that she received a payment for $5,000, the policy limit for mold, shortly after she made a claim for mold damage, but she denies that this payment was for mold because it was not indicated as such on the check. Plaintiff points to no provision in the Policy or controlling authority that would require Allstate to specify the check's purpose on the check itself, the check stub or statement. Moreover, plaintiff offers no explanation as to what other expense or adjustment the $5,000 check was designed to address. At the time the check was issued, it is undisputed that plaintiff had no other outstanding claims with Allstate aside from mold. It is also noteworthy that

plaintiff does not deny the check was in fact intended to pay her the policy limit of her mold coverage, but rather argues that a jury might conclude otherwise. The Court does not agree, finds that this argument borders on the frivolous, and finds that Allstate has met its obligations under the Policy with regard to mold. The Court will grant Allstate's motion for summary judgment on plaintiff's claims for breach of contract in Count I and vexatious refusal in Count II with regard to mold.

### 3. Living Expenses

Plaintiff also alleges in the Second Amended Complaint that she was not reimbursed under the Policy for living expenses. It is undisputed that following the water leak and during any of the repairs to her home in February 2008 through April 2008, plaintiff never moved out of her home. Further, in response to defendant's motion for summary judgment, plaintiff produced no evidence of additional living expenses on account of the water leak. In her deposition, plaintiff admitted that she neither had to move from her home nor incurred any additional living expenses. There is no evidence before the Court that Allstate failed to fulfill its obligation under the Policy with regard to living expenses, or that there was any factual support for plaintiff's claim for living expenses.

Allstate is entitled to summary judgment as to plaintiff's breach of contract claim in Count I and vexatious refusal claim in Count II with regard to the claim that Allstate failed to pay her living expenses.

### 4. Personal Property

Plaintiff also alleges in her Second Amended Complaint that Allstate breached its duties under the Policy and vexatiously refused to pay her claim for damage done to her personal property as a result of the water leak. Allstate makes a number of arguments in support of summary judgment

with regard to plaintiff's claim for damage to personal property. First, Allstate argues that any mold damage to personal property is covered by the $5,000 mold policy limit, which Allstate has already paid. With regard to water damage done to plaintiff's personal property, Allstate argues it is entitled to summary judgment because plaintiff failed to meet her obligations under the Policy because plaintiff failed to make a timely claim for damage done to her personal property, failed to preserve or protect the personal property, and did not allow Allstate to properly inspect the personal property. Allstate further contends that plaintiff has failed to provide the Court with any evidence to demonstrate she sustained a loss to her personal property that would be covered by the Policy such that a finder of fact could find in her favor. The Court will address each of these arguments in turn.

As for damage done to personal property as a result of mold, the Court agrees with Allstate that the Policy only has one mold limit for both dwelling and personal property, which Allstate has already paid. Therefore, plaintiff would not be entitled to additional damages for damage done to her personal property as a result of mold. Plaintiff would only be entitled to recover loss to her personal property as a result of water damage.

With respect to water damage done to personal property, Allstate argues plaintiff is not entitled to recover because she has not met her obligations under the Policy, and she has not shown that her personal property was even damaged. With regard to the timeliness of the claim, it is undisputed that plaintiff did not notify Allstate she had sustained any damage to her personal property as a result of the December 2007 leak until September 8, 2009 – twenty-two months after she made her initial claim. It is also undisputed that the Policy states that "in the event of a loss to any property . . . [the insured] must . . . immediately give [Allstate] or [its] agent notice." See Doc. 79, Ex. C at 16.

Allstate argues that the lateness of the claim entitles it to summary judgment. Allstate's argument is conclusory and unsupported, as Allstate cites to no controlling authority interpreting this or similar language in a policy. While Allstate's argument may have merit, it is not self proving. Allstate also argues that it was prejudiced by the timing of the claim, but it does not explain in what way. While plaintiff's claim of water damage to her personal property was undeniably late, the Court finds Allstate has failed to establish as a matter of law that plaintiff is precluded from making a claim under the Policy for water damage to her personal property due to the timing of the claim.

Allstate also argues that plaintiff is precluded from recovering for damage to her personal property because she was uncooperative when Carlita Barnes, Allstate's contents specialist, visited plaintiff's home to inspect the personal property. It is undisputed that plaintiff asked Ms. Barnes to leave her home before Allstate's inspection of plaintiff's personal property was complete.[5] It is also undisputed that a third party inspected the allegedly damaged property and prepared an inventory on Allstate's behalf, and that Ms. Barnes, Mr. Ribeiro and Mr. Lichius returned to plaintiff's home to inspect and determine what on the inventory list was damaged by water loss. See Doc. 79, Ex. 3 at 1. Allstate is not entitled to summary judgment based on the fact that plaintiff asked Ms. Barnes to leave during the first inspection, as she did allow Allstate to make additional inspections.

Allstate also argues that it is entitled to summary judgment with regard to claims for damage to personal property because plaintiff threw away some of the claimed items. It is undisputed that plaintiff threw away some of her damaged personal property prior to notifying Allstate that the

---

[5]The parties dispute the reason plaintiff asked Ms. Barnes to leave her home, but the Court finds this dispute immaterial for the purpose of summary judgment.

property had been damaged, and prior to Allstate's inspections. Under the terms of the Policy, plaintiff had a duty to retain the property she claimed was damaged, at least until Allstate had the opportunity to inspect it. Allstate was prejudiced by plaintiff throwing away the property before it was inspected because the parties dispute whether the property had even sustained damage due to the leak and, if so, whether it was water damage or mold damage. Without the property, there is no way to settle this dispute. Under Missouri law, it is plaintiff's burden to prove damages and under the Policy she had a duty to retain the property. Therefore, to the extent plaintiff threw away damaged property, Allstate is relieved of its obligation as to that property. JAM Inc., 128 S.W.3d at 896; see also Wiles v. Capitol Indem. Corp., 215 F.Supp.2d 1029, 1031 (E.D. Mo. 2001).

Plaintiff did not throw away all of the allegedly damaged personal property, however. Allstate and its agents inspected some of the personal property plaintiff that claims was water damaged, although there remains a dispute as to whether the property was indeed damaged. With regard to personal property that plaintiff did not throw away before Allstate had an opportunity to inspect it, Allstate is not relieved of its obligation under the Policy.

Finally, Allstate states in its reply memorandum that it is entitled to summary judgment with regard to personal property because plaintiff "has failed to provide this Court *any* evidence of the nature and extent of the personal property she claims and/or any evidence that would allow a finder of fact to determine what would be covered (damage as a result of physical loss of water) versus what would not be covered (damage as a result of mold)." Reply Mem. at 14 (emphasis in original). This statement is not correct. In response to summary judgment, plaintiff submitted an exhibit that contained an estimate from Craig Dodge Restorations, Inc. detailing water damage to a number of pieces of furniture and the cost estimate for repairs. See Doc. 86, Ex. 4 at 4. This document appears

to contradict Allstate's claim that there is no evidence of water damage to plaintiff's personal property. In her opposition memorandum, plaintiff states that this estimate was provided to Allstate. Plaintiff's representations regarding this exhibit go unanswered, as Allstate does not address the exhibit in its Reply. Therefore, the Court cannot conclude that plaintiff has no evidence of water damage to her personal property such that Allstate is entitled to summary judgment.

In sum, Allstate is entitled to summary judgment on plaintiff's claims concerning personal property that was damaged by mold and any allegedly damaged personal property that was thrown away before Allstate had an opportunity to inspect it. Allstate is not entitled to summary judgment with regard to plaintiff's claims that Allstate failed to fulfill its obligations under the Policy with respect to water damage to her personal property. There remain disputes of material fact as to whether plaintiff's personal property that she did not throw away was in fact damaged by water from the leak, and whether the damage was covered by the Policy. Therefore, the Court denies Allstate's motion for summary judgment as to plaintiff's claim for water damage to her personal property.

### B.    Counterclaim for Declaratory Judgment

In responding to plaintiff's Second Amended Complaint, Allstate filed a counterclaim against plaintiff for declaratory judgment. Pursuant to Rule 57, Fed. R. Civ. P., Allstate seeks to have the Court declare that there is no coverage under the Policy "due to applicable policy provisions, policy exclusions, satisfaction of claims made by plaintiff, and failure to comply with conditions precedent and/or duties after loss . . . ." See Doc. 28 at 4.

In its summary judgment motion, Allstate moves for judgment on the two counts plaintiff brought against it in her Second Amended Complaint, but does not mention its counterclaim. The

Court therefore does not construe Allstate's motion for summary judgment as seeking judgment on its declaratory judgment counterclaim.

That said, the Court has reviewed the docket in this case which reveals that plaintiff never answered Allstate's counterclaim. Technically, plaintiff is in default on the counterclaim, but Allstate has not moved for the entry of default under Rule 55(a), Fed. R. Civ. P., or for default judgment under Rule 55(b). The Court will order plaintiff to answer the counterclaim within ten days of the date of this Memorandum and Order and, in the event she does not do so, Allstate shall move for the entry of default.

### C. Mediation

On October 15, 2013, while this case was assigned to another judge, the parties filed a motion to be excused from mediation, which was granted. The motion stated in pertinent part, "Counsel for the parties have spoken and agree that due to the nature of wide discrepancy in the valuation of the claim, mediation would not be meaningful or efficient for the parties and/or the mediator." See Doc. 41 at 1. In the present Memorandum and Order, the Court has significantly narrowed the remaining issues in this case. In the Court's view, referral to mediation is appropriate at this time, as being in parties' interests as well as the interests of judicial economy and efficiency. Therefore, on the Court's own motion, the trial date will be vacated and this matter referred to mediation. If settlement is not achieved at mediation, the Court will reset the case for trial.

### V. Conclusion

For the foregoing reasons, the Court concludes that defendant Allstate is entitled to summary judgment on plaintiff's claims for breach of contract and vexatious refusal to pay based on the allegations that Allstate failed to reimburse plaintiff under the terms of the Policy for water damage

to her dwelling, mold damage and living expenses.  The Court further concludes that Allstate is not entitled to summary judgment on plaintiff's claims of breach of contract and vexatious refusal to pay based on the allegations that Allstate failed to reimburse her for water damage to her personal property, except that plaintiff may not claim any damage to personal property that was (1) a result of mold, or (2) thrown away before Allstate had an opportunity to inspect the personal property.

Accordingly,

**IT IS HEREBY ORDERED** that consistent with the terms of this Memorandum and Order, defendant Allstate Property and Casualty Insurance Company's motion for summary judgment is **GRANTED in part** and **DENIED in part**.  [Doc. 77]  The Motion is **GRANTED** as to plaintiff's claims for breach of contract and vexatious refusal to pay based on the allegations that Allstate failed to reimburse plaintiff under the terms of the homeowners policy at issue for water damage to plaintiff's dwelling, for mold damage, and for living expenses.  The motion is **DENIED** as to plaintiff's claims for breach of contract and vexatious refusal to pay based on the allegations that Allstate failed to reimburse plaintiff for water damage to her personal property, except that plaintiff may not claim any damage to personal property that was (1) a result of mold, or (2) thrown away before defendant had an opportunity to inspect the personal property.

**IT IS FURTHER ORDERED** that within ten (10) days of the date of this Memorandum and Order, plaintiff shall answer or otherwise respond to Allstate's counterclaim.  If plaintiff fails to comply, Allstate shall promptly file a motion for entry of default by the Clerk of the Court under Federal Rule of Civil Procedure 55(a) and, if appropriate, a motion for default judgment under Rule 55(b), supported by all necessary affidavits and documentation, as well as proposed orders for the Court's consideration.

**IT IS FURTHER ORDERED** that the October 14, 2014 trial date is **VACATED.**

**IT IS FURTHER ORDERED** that the Court will refer this case to court-sponsored alternative dispute resolution (mediation), and an order of referral will issue shortly.

An appropriate partial judgment will accompany this Memorandum and Order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  16th  day of September, 2014.