EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VICTORIA CENTO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No: 4:12-CV-00085 |
| | ) |
| ALLSTATE PROPERTY & | ) |
| CASUALTY INSURANCE COMPANY | ) |
| | ) |
| | ) |
| Defendant. | ) |

## ALLSTATE'S TRIAL BRIEF

COMES NOW Defendant Allstate pursuant to this Courts case management order of January 24, 2014, and for its Trial Brief states as follows:

### I.   Brief Statement of the Case

Plaintiff Victoria Cento claims Allstate breached the terms of its policy when the company, without reasonable cause or excuse, refused to pay her $43,279.99 for damages she sustained to her personal property when waterlogged insulation, from the December 17, 2007 water loss, created a hole in her kitchen floor causing water to leak onto her personal property in the basement/crawlspace below.

Allstate denies it is liable under the policy for damages sustained to Plaintiff's personal property as a result of a condition created by Plaintiff's contractor, and further asserts that *even assuming* the policy afforded coverage for such a loss, she should not recover for breach of contract and vexatious refusal because she materially breached the policy of insurance when she failed to complete her duties after loss, impeded Allstate's

evaluation of the claim, and materially misrepresented the nature scope and value of personal property she claims damaged or destroyed.

II. **Law in Dispute**

   A. **Legal Dispute: Whether Allstate can be held contractually liable to Plaintiff for damages allegedly sustained to Plaintiff's personal property when un-remediated water in the basement/crawlspace's insulation caused a hole in the floor between the kitchen and basement and allowed water to leak down on personal property into the basement/crawlspace, as a matter of law**.

Based on the same premise of law as applied by the this Court in granting Summary Judgment for Allstate with respect to Plaintiff's claims for Dwelling and Mold, Allstate contends it cannot be held liable for water damage that occurred to Plaintiff's personal property that occurred as a result of the improper repair and remediation of insulation.

Under Missouri law, it is the insured's duty to apprise the insurer of damages, and the insurer's duty to pay those damages that are covered by the policy. *West v. Shelter Mut. Co*, 864 S.W. 2d 458, 461 (Mo. Ct. App. 1993). Under Missouri law, upon an election to pay, and insurer fulfills its obligation to an insured upon payment of the difference between the fair market value immediately before and after the loss; the insurer is not obligated to oversee remediation and repairs or take responsibility for subsequent losses which occur as a result of faulty repairs. *Huesar v. Shelter Mut. Ins. Co.*, 901 S. W. 2d 138, 139 (Mo. Ct. App. 1995).

It is undisputed that the Allstate policy affords coverage only for a direct damages caused by a covered loss.   It is undisputed that Plaintiff claims personal property in the basement/crawlspace under her modular home sustained water damage when water saturated insulation caused a hole in the flooring above allowing water to fall down on the personal property and floor of the basement/crawlspace below.   It is undisputed in this case that within a week of being notified of the water damage, Allstate inspected the dwelling and paid what it estimated to be the extent of Plaintiff's damages, that Plaintiff made a number of additional claims for expenses related to water damage to the dwelling and that Allstate paid those claims. It is also undisputed that Keith Flamm, Plaintiff's boyfriend, did not remove and replace the insulation although the kitchen floor, above the basement/crawlspace.

**As such, Allstate asserts that Plaintiff cannot meet her burden for a prima facie case of breach of contract as to Element 2 (that she suffered damage to the covered property by a peril or cause specifically covered by the policy)** *infra***, and/or avoid a directed verdict at trial**.

**III.    Facts in Dispute:**

**A. Whether Allstate breached the policy when it refused to pay Plaintiff's personal property claim, and it's so, whether it did so vexatiously.**

*Breach of Contract*

To make a case for breach of contract, Plaintiff must show, by a preponderance of the evidence, each of the following elements: (1) Allstate issued a Policy for the specified

property for the loss and damage resulting from a listed peril or cause, (2) that she suffered damage to the covered property by a peril or cause specifically covered by the policy and (3) that the policy was in full force and effect on the date of the loss and; (4) a breach. *Childers v. State Farm*, 799 S.W. 2d. 138 (Mo. App. E.D. 1990).

### *Vexatious Refusal*

Even assuming Plaintiff can show Allstate breached its policy, in order to prevail on her claim for vexatious refusal, she must show by a preponderance of the evidence, (1) the claim must be based on an insurance contract "issued or delivered in this state" to a Missouri resident; (2) due demand was made a minimum of thirty days prior to date the action was filed; (3) the demand was made "under and in accordance with the terms and provisions of the contract of insurance"; (4) the insurer fails to or refuses to pay before this thirty day period expires; and (5) the refusal was "vexatious and without reasonable cause" which is defined as "willful and without reasonable cause, as the facts would appear to a reasonable and prudent person before trial." *Groves v. State Farm Mutual Auto Insurance Company*, 540 S.W.2d 39, 42 (Mo. Banc 1976). Emphasis Added.

In order for the court to even consider whether to grant attorney's fees, the reasonable value of the attorney's services must be shown by evidence in the record and supported by appropriate pleadings. *Russell v. Farmers & Merchants Ins. Co.*, 834 S.W.2d 209 (Mo. Ct. App. 1992).

### B. Whether Plaintiff materially breached the terms of a very policy under which she seeks recovery.

*Material Misrepresentation*

Under, policy provisions avoiding coverage for losses and/or occurrences in which any insured makes material misrepresentations are valid and enforceable in the state of Missouri. *Childers v. State Farm*, 799 S.W. 2d. 138 (Mo. App. E.D. 1990). An insured seeking to disclaim coverage on the basis of material misrepresentation must show, by a preponderance of the evidence that Plaintiff materially misrepresented the damage, destruction and value of personal property. *Id*.

*Failure to Cooperate*

Under the terms of the Policy, Plaintiff must perform certain conditions precedent to recovery *infra*. These provisions, also known as cooperation clauses are valid and enforceable under Missouri law. *Wiles v. Capitol Indem. Corp.*, 215 F. Supp. 2d 1029 (E.D. Mo. 2001).

Under Missouri law, the insurer is relieved of its obligations under a policy when it can show, by a preponderance of the evidence the insured's failure perform conditions precedent prejudiced or otherwise materially affected the insurer's ability to evaluate the claim or perform its obligations under the contract. *Id*. See also *Riffe v. Peeler*, 684 S.W.2d 539, 542 (Mo.App.1984).

IV. **Damages In Dispute**

   A. **Measure of Damages**

Under Missouri law, in the case of a partial loss, the insurer is obligated to pay the insured "a sum of money equal to the damage done to the property." *Wells v. Missouri Property Ins. Placement Facility*, 653 S.W.2d 207, 210 (Mo. banc 1983). The sum equal to the damage done to the property is the difference between the fair market value before and after the loss. *Id*. *See also* MAI 16.02 [2008 Revision] Fair Market Value (7th Ed.) (2012). The phrase "fair market value" is defined as "the price that the property in question would bring when offered for sale by one willing but not obliged to sell it and when bought by one willing or desirous to purchase it but who is not compelled to do so." *Peterson v. Continental Boiler Works, Inc.*, 783 S.W.2d 896 (Mo. banc 1990).

### B. Actual Cash Value

Under the terms and conditions of the Allstate policy, Allstate agrees to pay the actual cash value of a covered loss. Allstate only agrees to pay replacement cost value when the insurer repairs or replaces the damaged or destroyed property, whichever is less. Under the terms of the Allstate policy, upon payment of replacement value, Allstate is subrogated to the rights and ownership of such property. Missouri Courts hold that such provisions, even in the face of the valued policy statute, in the event of a partial loss, are valid and enforceable. *Wells v. Missouri Property Insurance Placement Facility*, 653 S.W.2d 207, 210 (Mo. banc 1983).

In the instant case, Plaintiff admits she has threw away the items claimed, and as such she is only entitled to receive the actual cash value of the property, not its replacement cost value.

### C. Effect of Partial Summary Judgment on Damages

On May 12, 2011, Plaintiff sent a demand letter via regular mail to the undersigned, counsel for Allstate Property making a demand for $80,000; $43,279.99 for personal property ($25,584.99 based on the values Plaintiff ascribed to GWB's inventory, and $17,695 to replace additional furniture not listed on the GWB inventory) and the remaining $36,720.01 for damages for mold and dwelling.

Of the $25,584.99 ascribed by Plaintiff to the GWB inventory, $13,253 of contents are denoted as "insurer added." These items were not seen by GWB or Allstate and were thrown out before Allstate had an opportunity to inspect them. As such, pursuant to this Court's Order of September 16, 2014, any damages for these items were resolved on summary judgment.

Of the $17,695 demanded in Plaintiff's May 12, 2011 demand letter "to replace" furniture plaintiff threw away, these items were also not seen by GWB or Allstate and were thrown out before Allstate had an opportunity to inspect them. As such, pursuant to this Court's Order of September 16, 2014, any damages for these items were resolved on summary judgment.

As a result of this Court's September 16, 2014 Order granting Allstate partial summary judgment with respect to plaintiffs personal property claim, even assuming Allstate can be held contractually liable for damages that result to Plaintiff's personal property as a result of her contractor's failure to timely and properly re, pursuant to the courts granting Allstate partial summary judgment with respect to Plaintiff's personal

property either 1) damaged by mold or 2) that Allstate did not have the opportunity to inspect, the only items those items which Allstate had the are $12,331.99; the value Plaintiff ascribed to the GWB inventory, minus the items GWB did not have the opportunity to inspect identified as "insurer added" after the inspection.

**RYNEARSON, SUESS, SCHNURBUSCH & CHAMPION L.L.C.**

/S/ Ellen Jean Brooke
Ellen Jean Brooke            #58901MO
Katherine M. Smith           #57881MO
500 N. Broadway, Suite 1550
St. Louis, Missouri 63102
(314) 421-4430
(314) 421-4431 (FAX)
E-Mail: ebrooke@rssclaw.com
         ksmith@rssclaw.com
*Attorneys for Defendant/Counterclaim Plaintiff Allstate*

**CERTIFICATE OF SERVICE**

The undersigned states that the foregoing document was served via the Court's electronic filing system and via email, on January 12, 2015 upon:

Celestine Dotson
Law Office of Celestine Dotson
300 N. Tucker, Suite 301
St. Louis, MO 63101
dotsonlaw@sbcglobal.net
*Attorney for Plaintiff*

/S/ Ellen Jean Brooke